**840**

## WITTNEBERT v. AMERICAN NAT. INS. CO.

#### No. 3932.

Court of Civil Appeals of Texas. El Paso.

March 28, 1940.

Rehearing Denied April 18, 1940.

Hull & Oliver, of San Antonio, for appellant.

Claud J. Carter, Jr., and Claud J. Carter, both of San Antonio, for appellee.

WALTHALL, Justice.

This suit was brought by appellant, Lurline Wittnebert, the surviving widow of Duke Wittnebert, against the American National Insurance Company to recover upon a policy of insurance issued by the appellee Insurance Company to her husband, and in which policy appellant was named the beneficiary.

The policy was of date November 27, 1925, and was in the sum of $2,500. Duke Wittnebert, the insured, died on October 4, 1936, within the first quarter of the policy year, which commenced on November 27, 1935, and ended on November 27, 1936. Appellant alleged that all premiums had been paid on said policy, including the first quarter of the policy year in which the insured died, the policy year being 1935.

The Insurance Company answered in the suit and alleged that at the time of the death of the insured on October 4, 1936, the policy was lapsed.

The case was tried by the court without a jury and resulted in a judgment in favor of the Insurance Company.

The plaintiff, appellant here, prosecutes this appeal.

The only question presented here is whether all premiums had been paid on the policy at the time of the death of the insured on October 4, 1936.

The facts are undisputed. The insured, Duke Wittnebert, paid the premiums on the policy from the time the policy was issued to him on November 27, 1925, and died within the policy year which commenced on November 27, 1935, and ended on November 27, 1936.

Within that policy year the insured paid the whole of the first quarter and a part of the second quarter of that policy year.

Prior thereto the insured had borrowed from the appellee Insurance Company the remainder of his cash benefits under the policy, for which he had executed his note, the note to be deducted from the benefits.

The insured in his written application for the policy, which forms a part of the policy, requested the Insurance Company to pay the premiums as they became due and charge such payments as a loan against the policy. The Company did so until March 15, 1936, on which date the Company submits that the policy, by its terms, lapsed, and was out of benefit on October 4th of that year, the date of the death of the insured.

We copy here such parts of the policy as seem pertinent to the issues presented:

"The first premium hereunder, receipt of which is hereby acknowledged, is that shown at the head of this page. This premium or this premium with others corresponding to the first year's duration of this contract shall be for term insurance terminating on the 27th of November, 1926. Premiums subsequent to the first premium hereunder shall be payable and in the amounts as follows:

"Payable annually on the 27th day of November, $65.38

"Payable semi-annually on the 27th days of November and May * * * of each year, $34.10

"Payable quarter-annually on the 27th days of November, February * * *,

May * * * and August of each year, $17.43

"It being understood that one annual, or two semi-annual, or four quarter-annual premiums constitute all the payments required under this Policy for the period of one full year, and it being further understood that, until a change has been made in accordance with the provisions hereinafter set forth, the mode of payment and amount of premium shall be that set forth at the head of this Policy. The payment of premiums shall continue until the death of the Insured, any remaining premiums for the then current policy year being deducted in any settlement hereunder. The method of payment of premiums may be changed at any time after the first policy year upon application to the Home Office.

"Consideration

"The consideration for this policy is the application herefor, which is made a part of this contract and a copy of which application is attached hereto or endorsed herein, and the payment in advance of premiums for the periods, at the times, and in the amounts as provided above, the first year's premium hereunder being for preliminary term insurance as there specified.

"Payments of Premiums

"All premiums under this policy are payable in advance either at the Home Office or to any Agent upon delivery of a receipt signed by the President, Vice-President, Secretary or Actuary of the Company.

"If any premium or obligation given for all or a part of any premium or other indebtedness is not paid on or before the date when due, the liability of the Company hereunder shall cease, except as otherwise provided in this policy.

"A period of grace of one month in accordance with the Statutes of the State in which this Policy is delivered will be allowed for the payment of every premium hereunder after the first, without any interest charge therefor, during which month the full insurance hereunder shall continue in force, if, however, the Insured shall die within said period of grace, all unpaid premium or premiums for the current policy year will be deducted in any settlement hereunder.

"Cash Loans

"After three full year's premiums hereon have been duly paid, the Company at any time while this Policy is in full force will loan upon the proper assignment of said Policy, and upon the sole security thereof, at a rate of interest at six per centum per annum, a sum equal to, or at the option of the owner hereof, less than the reserve hereon at the end of the current Policy year, from which has been deducted an amount not greater than twenty-per cent of the reserve hereon or two and one-half per cent of the amount insured hereunder, whichever is less. The Company will deduct from such loan value any existing indebtedness hereon and any unpaid balance for the premium for the current policy year, and will collect interest in advance on the loan to the end of the current policy year. Said loan may be deferred for not exceeding ninety days after application therefor is made.

"Premium Loans

"If any premium hereon shall not be paid when due and if the Insured has so requested in said Insured's Application herefor, the Company will, without further request on the part of Insured, charge the amount then due hereunder as a loan against the Policy, with interest in advance at a rate of six per cent per annum, if the loan value hereon after the payment of the premiums so charged be sufficient to secure all indebtedness hereunder with interest. If the premium is so charged, this Policy will be continued in force the same in all respects as though the premium paid by said loan had been specifically requested by the Insured at the time it was made. The same benefit will be applied from time to time as the premiums become due hereunder and are not paid, as long as the balance of the loan value hereon after the payments of the premium as charged is sufficient to pay for one day's insurance on a pro rata basis.

"Notice of such loans will be mailed to the Insured when made, and said Insured may resume the payment of premiums hereon at any time without medical re-examination while the policy is so continued in force.

"Indebtedness

"Any indebtedness to the Company hereon will be deducted in any settlement hereunder upon the death of the Insured

or in the payment of any other benefit. If this Policy shall lapse and there shall be an indebtedness hereon, the said indebtedness will be deducted from the Cash value of the Policy at date of default, and the balance will be (A) paid to the Insured in cash, or (B) applied to the purchase of Paid-up Insurance, or (C) applied to extend the face amount of the insurance hereunder, at the option of said insured, and said values shall be calculated upon the same basis as the value herein shown in the table of guaranteed Loans and Surrender Values.

"In any settlement of the Policy the indebtedness to the Company hereon shall be a first lien in priority to the claim of any beneficiary or assignee.

. "Default in repayment in any loan, or in payment of interest thereon, shall not avoid the Policy until the total indebtedness hereon to the Company shall equal or exceed the loan value at date of default. The indebtedness may be repaid wholly or in part, in cash, or, subject to the restrictions above set forth, may be allowed to remain as a loan against the Policy.

"If the Insured in the application herefor has requested that Paid-up or Extended Insurance benefits be granted without further action on the part of said Insured, in event of default in the payment of premiums any indebtedness hereunder will be deducted from the cash value of the Policy at date of default and the balance applied to the purchase of said benefits on the same basis as the values shown in the Tables of Guaranteed Loan and Surrender Values; and in case the provision entitled "Premium Loans" be applied, any already existing indebtedness against this Policy will be deducted from the cash value of the Policy in ascertaining the amount available for such loans."

In the application for the policy the insured requested the Company to make the premium loans to pay the premiums, without any action on his part, and also contracted for the payment of the premiums quarterly ($17.43), in November, February, May and August.

Appellant testified that in 1933 her husband made a loan against the policy involved for the sum of $227.50, bearing interest at six per cent from date of the loan, and that the loan was never paid.

Joseph W. Hahn, a witness for appellant, qualified to testify concerning payments of premiums on the policy involved here, and in 1938 made an analysis of policy payments to appellee from its records. The witness testified on cross-examination:

Question: "Just how much was paid by the automatic loan provision of the policy?"

Answer: "The quarterly premiums, February 27, 1934; May 27, 1934; August 27, 1934; November 27, 1934; February 27, 1935; November 27, 1935; and a portion of the quarterly premium due February 27, 1936, in amount $3.33."

Question: "Now, what was the loan on the policy on the 27th of May, 1934, how much was against the policy at that time?

"After the premiums had been paid by automatic loans?"

"Yes, sir."

"The total loan then was $248.99."

"All right. Then, on August 27, 1934, after you had paid the premiums and interest, how much was against the policy?"

"$270.48."

"And then on November 27, 1934, after you had paid the premium—the quarterly premium of $17.43, how much was against the policy?"

"$292.29."

"Then, on the 27th of February, 1935, after you had likewise paid the premium and interest, how much was there against it?"

"The total loan was $314.44."

"And then on May 27, 1935, after you had likewise paid the premium and interest—the quarterly premium and interest —how much was due?"

"$336.92. I beg your pardon, what was that date you gave me—May 27th?"

"May 27th."

"May 27th, that is correct."

"$336.00?"

"$336.92."

"And on August 27th, when the next quarterly premium was due, you paid that, $17.43, $5.74 interest,—what was the total due?"

"$355.75."

"November 27, '35, there was another quarterly premium paid of $17.43, $5.74

interest. How much then was the loan on the policy?"

"$382.92."

"Then, on the 27th of February, 1936, you paid the quarterly premium of $3.00, part of the quarterly premium of $3.33. Is that right?"

"Yes, sir."

"And $1.11 interest. How much was due on the policy?"

"$387.36."

"Now, on the 27th of February, 1936, state whether or not the $387.36 was the full loan value of the policy."

"No. The $387.36 was the full loan value of the policy at the . end of the seventeenth day period beginning on February 28, 1936, and extending through March 15, 1936. That period was the period for which the $3.33 paid the premium."

"Yes, sir. Well, when you applied the premium of $3.33 and interest of $1.11, why didn't you apply the $17.43 and the value of the interest, as you had applied in other payments?"

"It was found that if that were done, if a loan for the full quarterly premium had been made, then the loan value at the end of the period for which they would have been paid would have been less than the loan, that is, the loan would have exceeded the full value of the policy."

The witness further testified: "The Company's records show that the Company gave notice to the assured that it was paying these payments by automatic premium loans as provided by the policy, and on March 27, 1936 (witness not certain as to exact date), the Company notified the insured that there was no further value in the policy; that the automatic premium payments and the loan that he had already made of $227.00 had taken up the value of the policy."

On May 8, 1936, the appellee Company wrote a letter to the insured, the contents of which we omit, but calling his attention to the lapsed policy, and asked the insured to fill out and sign an enclosed application and forward it to the Company with past due premiums and interest. Counsel for appellant admitted that at no time was any application made to reinstate the policy.

Witness Hahn made some further statements, which we omit, but to the effect that $387.36 was the full loan value on the policy on February 27, 1936, and·that at the end of the one month grace period, March 27, 1936, under the witness's computation, there was no further loan value in the policy; and no further loan value on the policy on October 4, 1936, at the death of the insured.

We have concluded that the insured in his written application for the policy having requested the appellee Insurance Company to pay the premiums as they became due and charge them as a loan against the policy, and the appellee having done so until March 15, 1936, that on October 4, 1936, the policy by its terms had lapsed and was out of benefit, and that the trial court was not in error in holding that appellant recover naught against appellee.

The case is affirmed.